# SETTLEMENT AGREEMENT AND RELEASE OF ALL CLAIMS

This Settlement Agreement and Release of All Claims ("Agreement") is made by and between NEPHRON CORPORATION AND NEELA K. SHAH (collectively "Nephron and Shah") and EMILY BECK. ("Ms. Beck") (collectively "the Parties").

## RECITALS

WHEREAS, Ms. Beck has filed a Lawsuit against Nephron and Shah,

WHEREAS, Nephron and Shah deny any violations of law and deny any liability to Ms. Beck, but wishes to avoid further legal fees and expenses, and

WHEREAS, the parties hereto wish to resolve all of their disputes and settle these matters in a confidential manner that will avoid the need for further litigation,

NOW THEREFORE, in consideration of the material covenants and promises contained herein, the parties agree as follows:

1. **Consideration.** In consideration for Ms. Beck's execution of and compliance with all his obligations under this Agreement, Nephron and Shah will pay to Ms. Beck within 14 ~~three business~~ days the total sum of FIFTY ONE THOUSAND and 00/xx dollars ($51,000.00/xx), payable as follows:

    a. TEN THOUSAND SEVEN HUNDRED THIRTY SEVEN and 74/xx dollars ($10,737.74/xx) in back pay less all applicable legally required deductions in accordance with normal payroll procedures. A W-2 tax form will be issued to Ms. Beck for this amount.

    b. TEN THOUSAND SEVEN HUNDRED THIRTY SEVEN and 74/xx dollars ($10,737.74/xx) as liquidated damages. A form 1099 will be issued to Ms. Beck for this amount.

    c. TWENTY NINE THOUSAND FIVE HUNDRED TWENTY FOUR and 64/xx dollars ($29,524.69/xx) for Ms. Beck's attorneys' fees and costs. This amount will be made payable to Martin & Martin LLP. A 1099 tax form will be issued directly to Martin & Martin LLP for this amount. Ms. Beck's counsel agrees to provide the Company with completed copies of any necessary

Initials

tax forms (including a W-9) prior to the Company making such payments.

Ms. Beck acknowledges that, but for the execution of this Agreement, she would not be entitled to receive this Consideration or other consideration provided for in this Agreement. Ms. Beck further agrees and acknowledges that the Consideration stated herein fully compensates her for any and all alleged back wages (including those for all hours worked), overtime wages, benefits or any other form of compensation, damages, attorneys' fees, and costs, to date and that she neither seeks nor is entitled to any further wages, pay, overtime, benefits or any other form of compensation or relief, and Nephron and Shah are making this payment to eliminate any possible dispute or doubt that she has been paid fully and completely.

The parties acknowledge the adequacy of Consideration provided herein by each to the other, that this is a legally binding document, and that they intend to comply with and be faithful to its terms.

2. **Dismissal of Lawsuit.** Ms. Beck is the Plaintiff in the case styled *EMILY BECK v. NEPHRON CORPORATION and NEELA K. SHAH*, Civil Action Number:1:13-cv-03408-MHS ("Lawsuit") which is pending in the United States District Court for the Northern District of Georgia. By executing this Agreement, Ms. Beck and her counsel agree to the dismissal of the Lawsuit with prejudice. Ms. Beck shall promptly execute such documents or appear in court as necessary to obtain a dismissal with prejudice of the Lawsuit. Ms. Beck must sign this Settlement Agreement and Release of All Claims and the Court must dismiss the Lawsuit with prejudice before the Company is obligated to make any payment set forth in Paragraph 1 above.

3. **Full and Complete Release.** In consideration for this Agreement, Ms. Beck hereby settles, waives, releases and discharges all claims whatsoever against the Nephron and Shah and the other parties released (identified in Paragraph 5 below) with respect to each and every claim, cause of action, right, liability or demand of any kind or nature known and unknown at this time that Ms. Beck may have or may have had which arose at any time and which may arise at any time until this Agreement is duly executed. Such claims that are hereby released include by way of example, but not limitation, all claims:

    a.    arising from Ms. Beck's employment with the Nephron and Shah;


Initials

    b.    based on discrimination, retaliation or harassment on the basis of age, race, religion, sex or disability under the Civil Rights Act of 1866, 42 U.S.C. § 1981, Title VII of the Civil Rights Act of 1964, the Employee Retirement and Income Security Act of 1974, the Americans with Disabilities Act, the Family and Medical Leave Act, or any other federal, state or local laws or common laws;

    c.    based on any oral, written or implied contract, tort, promissory estoppel, or public policy; and

    d.    relating to any wages, pay, back pay, overtime, benefits or any other form of compensation, attorneys' fees (except those provided in Paragraph 1 above), interest or costs, including attorneys' fees incurred in connection with any review of this Agreement by an attorney.

This Agreement does not release any right or claim which may arise after the date of this Agreement nor does it extend to vested benefits, if any.

Ms. Beck agrees not to sue or authorize anyone else to file a lawsuit on his behalf against Nephron and Shah (or any of the parties released) on any claims released herein. Ms. Beck further agrees not to become a member of any class suing Nephron and Shah (or the other parties released) on any claims released herein. Nothing in the Agreement is intended to or prevents Ms. Beck from filing a charge or complaint with the Equal Employment Opportunity Commission ("EEOC") or other governmental agency or from participating in any investigation or proceeding conducted by the EEOC or other governmental agency. Ms. Beck, however, agrees not to accept or recover any damages or any other form of relief which may arise out of or in connection with any administrative proceedings pursued by Ms. Beck, or pursued independently by the EEOC or any other person, agency or class on any claims released herein, and if awarded any damages from such an action, Mr. Beck agrees to return any amount she is awarded to the Nephron and Shah.

Ms. Beck further agrees not to assist any of Nephron and Shah's current or former employees with any lawsuit or claims against the them, except that she may provide truthful testimony in response to a subpoena or court order.

    4.    **Medical Bills, Liens, and Other Potential Rights for Reimbursement.**


Initials

a. **Responsibility for Satisfaction of All Liens.** Ms. Beck represents and warrants that all bills, costs or liens resulting from or arising out of Ms. Beck's alleged injuries, claims and/or the Lawsuit are Ms. Becks's responsibility to pay. Ms. Beck agrees to assume responsibility for satisfaction of any and all demands for payment, claims or liens of any kinds, that arise from or are related to payments made or services provided to Ms. Beck or on Ms. Beck's behalf. Ms. Beck agrees to assume responsibility for all expenses, costs or fees incurred by Ms. Beck related to Ms. Beck's alleged injuries, claims and/or the Lawsuit, including without limitation, all Medicare conditional payments, subrogation claims, liens or other rights to payment, relating to medical treatment or lost wages that have been or may be asserted by any health care provider, insurer, governmental entity, employer or other person or entity. Further, Ms. Beck will indemnify, defend and hold the parties released harmless from any and all damages, claims and rights to payment, including any attorneys' fees, brought by any person, entity or governmental agency to recover any of these amounts.

b. **Good Faith Resolution.** This settlement is based upon a good faith determination of the parties to resolve a disputed claim. The parties have not shifted responsibility of medical treatment to Medicare in contravention of 42 U.S.C. Section 1395y(b). The parties resolved this matter in compliance with both state and federal law. The parties made every effort to adequately protect Medicare's interest and incorporate such in the settlement terms.

c. **Representation that Plaintiff is Not a Medicare Beneficiary.** Ms. Beck warrants that Ms. Beck is not a Medicare Beneficiary as of the date of this Agreement and will not become a Medicare Beneficiary within thirty (30) days after the date of the Agreement. Because Ms. Beck is not a Medicare recipient as of the date of this Agreement, no conditional payments have been made by Medicare.

d. **Representation that No Medicare Conditional Payments Exist; Best Efforts to Obtain Confirmation.** Ms. Beck further represents and warrants that she is aware of no Medicare conditional payments that have been made on her behalf.

e. **Agreement to Indemnify, Defend, and Hold Harmless.** Ms. Beck will indemnify, defend and hold the parties released harmless


Initials

from any and all claims, liens, Medicare conditional payments and rights to payment, known or unknown. If any governmental entity, or anyone acting on behalf of any governmental entity, seeks damages, including multiple damages, from the parties released relating to payment by such governmental entity, or anyone acting on behalf of such governmental entity, relating to Ms. Beck's alleged injuries, claims and/or the Lawsuit, Mr. Beck will defend and indemnify the parties released and hold the parties released harmless from any and all such damages, claims, liens, Medicare conditional payments and rights to payment, including any attorneys' fees sought by such entities.

5.  **Parties Released.** Ms. Beck acknowledges that this Agreement and the release provision in Paragraph 3 above apply to and protect in all respects Nephron and Shah and each of Nephron's past, current and future parent companies, insurers, affiliates, related companies, successors and assigns, officers, managers, directors, agents, and employees of any such entity.

6.  **Modification.** No modification, amendments, cancellation, deletion, addition, extension or other changes in this Agreement shall be effective for any purpose unless specifically set forth in a written agreement signed by Ms. Beck, Meeta Shah and an authorized representative of Nephron. This Agreement constitutes a single, integrated written agreement containing the entire understanding between Ms. Becks and Nephron and Shah regarding the subject matter hereof and supersedes and replaces any and all prior agreements and understandings, written or oral.

7.  **Confidentiality.** Unless otherwise required by law or pursuant to court order, Ms. Beck agrees to keep the subject matter of his Lawsuit, the existence of this Agreement, and the fact she received any money from Nephron and Shah in connection with this Agreement absolutely and strictly confidential forever. Ms. Beck represents that she has not disclosed the subject matter or terms of this Agreement or the amount of the Consideration at any time before execution of the Agreement. Ms. Beck agrees not to discuss anything about this Agreement with anyone (other than her spouse, her attorney or other adviser she consults for professional advice, and all such persons shall be apprised of the provisions of this Paragraph and must agree to be bound by them prior to making any disclosures to them), and Ms. Beck will not authorize anyone to discuss anything about this Agreement, including all of the matters that she agreed to keep confidential. Notwithstanding this paragraph, she may disclose that she "dismissed her claim and decided to move on." Ms. Beck shall not contact any current or former


Initials

employees of Nephron regarding her claims or the disposition or outcome of this action.

8. **Mutual Non-Disparagement.** Ms. Beck shall not make any disparaging remarks of any sort or otherwise communicate any disparaging comments about Nephron or Shah or any of the other released entities or persons to any third party at any time following her execution of this Agreement. Nephron and Shah agree not to initiate or continue any investigation into Ms. Beck's conduct or performance, unless evidence of violations of law are discovered. Furthermore, Nephron agrees that it shall not make any disparaging remarks about Ms. Beck to any other person or entity (for purposes of this Paragraph 8, in regard to Nephron's non-disparagement obligations only, "Nephron" shall also mean individuals Neela K. Shah and Kirti K. Shah, the officers of Nephron, Nephron's Board of Directors for the duration of the Agreement). In accordance with Nephron's usual practice, Nephron will confirm Ms. Beck's dates of employment and Ms. Beck's job description upon request. Notwithstanding the above, nothing in this provision shall prevent or prohibit any Party from testifying in any legal proceeding, including at deposition, hearing or trial, from cooperating in good faith in any governmental investigation or action, or from making any report required by law.

9. **Non-Admissions.** This Agreement does not constitute an admission by any party that they have violated any law or statute and all parties specifically deny any such violation occurred.

10. **Non-Waiver.** Nephron and Shah's failure to enforce any provision of this Agreement shall not act as a waiver of that or any other provision. Nephron and Shah's waiver of any breach of this Agreement shall not act as a waiver of any other breach.

11. **Severability.** The provisions of this Agreement are severable. If any provision is determined to be invalid, illegal, or unenforceable, in whole or in part, then such provision shall be modified so as to be enforceable to the maximum extent permitted by law. If such provision cannot be modified to be enforceable, then the unenforceable element of the provision (or, failing that, the entire provision) shall be severed from this Agreement. The remaining provisions and any partially enforceable provisions shall remain in full force and effect.

12. **No Strict Construction.** If there is a dispute about the language of this Agreement, the fact that one party drafted the Agreement shall not be used in its interpretation.

_CB_
Initials

13. **Acknowledgments.** By signing this Agreement, Ms. Beck acknowledges and warrants that:

   a. Ms. Beck has carefully read and fully understands every provision of this Agreement, including, without limitation, the confidentiality clause in Paragraph 7 above, the release of all claims listed in Paragraph 3 above and Ms. Beck's agreement to dismiss her Lawsuit with referenced in Paragraph 2;

   b. Ms. Beck was advised in writing, via this Agreement to consult with an attorney and, in fact, consulted with an attorney of her choosing before signing this Agreement;

   c. Ms. Beck has had a reasonable amount of time after receiving this Agreement to consider it; and

   d. Ms. Beck accepts this Agreement knowingly and voluntarily, and she was not intimidated, coerced or pressured.

14. **Representations.** Ms. Beck represents and warrants that she is fully authorized to execute this Agreement and that she has not assigned, transferred or pledged all or any portion of the claims hereby released.

MR. BECK DECLARES THAT SHE HAS CAREFULLY READ THIS AGREEMENT, CONSULTED AN ATTORNEY, UNDERSTANDS THIS AGREEMENT, AND EXECUTES THIS AGREEMENT KNOWINGLY AND VOLUNTARILY.

_____
Emily Beck
4-2-15
Date

_____
For Nephron Corporation
4/2/2015
Date

_____
Neela K. Shah

4-2-2015
Date


Initials

7-  r 7